UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

DONNA LYNN HRYNKO

    Plaintiff,

    v.                                                           Case No. 2:17-cv-55-JVB-JEM

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security Administration,

    Defendant.

**OPINION AND ORDER**

Plaintiff Donna Lynn Hrynko seeks judicial review of the Social Security Commissioner's decision denying her disability benefits, and asks this Court to remand the case. For the reasons below, this Court remands the ALJ's decision.

**A.    Overview of the Case**

Plaintiff alleges that she became disabled on August 3, 2010. (R. at 366.) Plaintiff most recently worked at Walgreens, but has not worked since 2010. (R. at 37–38.) The Administrative Law Judge ("ALJ") found that Plaintiff suffered from severe physical and mental impairments. (R. at 13.) However, the ALJ concluded that she could perform other jobs that existed in significant numbers. (R. at 22.) Therefore, the ALJ denied her benefits. (R. at 23.) This decision became final when the Appeals Council denied Plaintiff's request for review. (R. at 1.) Plaintiff previously applied for disability benefits in 2010, but a different ALJ denied her benefits. (R. at 128–41.) Plaintiff's request to reopen that decision was denied. (R. at 11.)

B.  **Standard of Review**

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if it is such "that a reasonable mind might accept as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

C.  **Disability Standard**

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

D.  **Analysis**

Plaintiff argues that the ALJ erred in finding that she was not disabled. Specifically, Plaintiff argues that the ALJ, in his Residual Functional Capacity ("RFC") analysis, improperly discounted Plaintiff's mental and physical impairments. Additionally, Plaintiff claims that the

RFC includes limitations that do not actually address Plaintiff's impairments. Plaintiff is correct.

**(1)     The ALJ Improperly Discounted Plaintiff's Seizures**

Plaintiff has a history of seizures dating back decades. (R. at 1289.) The ALJ, however, felt that her seizures were controlled with medication and thus were not disabling. (R. at 17–18.) This logic is valid. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010.) However, the ALJ then faulted Plaintiff for "complicat[ing] the epilepsy" by foregoing her medication and by overdosing. (R. at 18.) But the record contains ample evidence showing that Plaintiff had a good reason for missing her medication. Additionally, Plaintiff's overdoses appear to be a symptom of her depression. Because the ALJ failed to "confront [this] evidence . . . and explain why it was rejected," remand is required. *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004).

(a)     *Plaintiff Presented a Good Reason for Her Non-Compliance with Medication*

That a plaintiff stops treatment tends to undermine her disability claim. *Beardsley v. Colvin,* 758 F.3d 834, 840 (7th Cir. 2014). However, an ALJ must determine whether she had a good reason to stop treatment. *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015). Here, the ALJ correctly noted that "the record shows non-compliance with her epilepsy treatment." (R. at 18.) Yet, the record also shows that when she lost her job in 2010, she also lost her insurance and hence could not afford the medicine. (R. at 539.) At one point, she could not see her neurologist because she lacked insurance. (R. at 657.) She even told her doctor that she would not be taking any prescribed medication because she would not be able to afford it. (R. at 537.) The Seventh Circuit has regularly found lack of health insurance to be a good reason for non-compliance. *See Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013). The ALJ, having failed to address this evidence, must do so on remand.

(b) *Plaintiff's Depression Seemed to Interfere with Her Seizure Treatment*

The ALJ notes that Plaintiff appeared to cause one of her worst seizures by overdosing on Xanax. (R. at 18.) This may have been related to Plaintiff's battle with suicidal tendencies. A few weeks after the overdose, for instance, her case manager, Deondra Thomas, started a new treatment plan for Plaintiff that involved "reduc[ing] or eliminat[ing] suicidal ideation." (R. at 1110.) Less than a year before, Plaintiff went through foreclosure and stated that she would kill herself if she "ended up homeless." (R. at 834.) And two years before that, she actually did attempt suicide via overdose. (R. at 537.) More recently, Plaintiff testified that she had suicidal thoughts around two months prior to the hearing. (R. at 98.)

When a plaintiff presents with multiple impairments, at least one of which is severe, an ALJ must "consider the *aggregate* effect of this entire constellation of ailments." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (emphasis in original). Here, a 2011 psychiatric report indicated that Plaintiff's "depression and anxiety exacerbate her physical problems." (R. at 628.) Two years later, Plaintiff went to the hospital complaining of seizures; the doctor opined that "[s]ymptoms are made worse by stress." (R. at 776.) And as shown by her history of overdoses, her depression may affect her ability to reliably take her medication. *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) ("mental illness in general . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment"). Yet, the ALJ considered Plaintiff's mental disorders in isolation and hardly touched upon her suicidal tendencies beyond merely mentioning them. The ALJ must expand this discussion on remand.

**(2) The ALJ Improperly Discounted Plaintiff's Mood Disorder**

At step two, the ALJ found that Plaintiff suffered from a severe mood disorder. (R. at 13.)

He then found that "it would not preclude work" because her depression seemed to be under control with Xanax. (R. at 19.) Given that the ALJ partially relied on the hospital visit where Plaintiff overdosed on Xanax—an action possibly induced by her depression—this conclusion is problematic. What follows, however, is nonsensical. The ALJ noted that Plaintiff once told a doctor that her back pain and seizures rendered her disabled; her failure to mention mental issues was, in the ALJ's words, "very significant." (R. at 868.) Apparently, a condition is not disabling unless one insists at all times that it is. But Plaintiff told her therapist that she could not get a job due to her mental-health issues. (R. at 805.) Moreover, when later asked what issues she "need[ed] help with the most," she responded with "mental illness." (R. at 1103.) So even if the ALJ's logic were valid, his conclusion is incorrect. On remand, the ALJ must conduct a proper analysis of Plaintiff's mood disorder.

**(3)   The ALJ Improperly Discounted the Testimony of Deondra Thomas**

Plaintiff argues that the ALJ failed to properly weigh Ms. Thomas' testimony using the required factors. Although Ms. Thomas is not a doctor, she is a case manager who saw Plaintiff "in [her] professional capacity," and thus her opinion is relevant and must be considered. S.S.R. 06-03p. The regulations instruct an ALJ to consider various factors, which touch upon who the person is, how well she knows the plaintiff, how well she explains herself, and how well her opinion matches the record, among other factors. *Id.* Here, the ALJ discussed these factors, but only gave Ms. Thomas' testimony weight "as far as it confirms that she has epilepsy and a mood disorder that has been supported in the record." (R. at 21.) However, because of the errors discussed above, the ALJ's understanding of what the record supports is fundamentally flawed. He must, therefore, reweigh Ms. Thomas' testimony after addressing the errors related to Plaintiff's seizure and mood-disorder discussions.

The ALJ also questioned Ms. Thomas' integrity by suggesting that she might have given "a more sympathetic opinion of [Plaintiff's] limitations." (R. at 21.) Yet, the mere possibility of bias does not, by itself, justify discounting an opinion. *Garcia*, 741 F.3d at 758. *See also Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009) (remanding where the ALJ discounted a medical opinion merely because it "may have been made to help the claimant in a pending legal matter"). If, on remand, the ALJ feels that Ms. Thomas is biased, then he must point to specific evidence showing this bias, rather than just assume its existence and penalize Plaintiff accordingly.

On a related note, Ms. Thomas provided a functional report that the ALJ failed to mention. (R. at 469–77.) The Commissioner concedes this, but argues that, because the report simply mirrored Ms. Thomas' testimony, the ALJ's handling of the testimony applies to the report. (Def.'s Resp. at 13.) This logic, while valid, does not apply here because the ALJ's handling of the testimony is invalid. *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004). The ALJ must discuss this report on remand.

**(4) The ALJ Improperly Discounted Plaintiff's Concentration Issues**

At step three, the ALJ found that Plaintiff suffered "moderate difficulties" in "concentration, persistence or pace" but noted that Plaintiff successfully completed her disability paperwork. *Id*. In fact, the ALJ "[found] it significant that the case management notes from Deondra Thomas further show [that Plaintiff] was able to complete tasks in order to apply for disability." (R. at 19.) However, the notes also show that Plaintiff struggled mightily with those tasks. According to the notes, the paperwork often left her overwhelmed and confused. (R. at 759–70.) Moreover, she had to be redirected several times to focus on the task at hand. (R. at 939–47.) This is significant, because the vocational expert ("VE") testified that no employer would tolerate having to redirect an employee two or three times a week. (R. at 119.) The ALJ

6

conceded that Plaintiff has "reduced concentration at times," but the notes suggest that this may happen so often that she could not hold a job. The ALJ must confront this evidence on remand.

**(5)     The ALJ Failed to Account for Plaintiff's Concentration Issues**

Having found that Plaintiff suffered from moderate concentration issues, the ALJ limited Plaintiff to "simple, routine and repetitive tasks" with only daily production quotas. (R. at 15.) The ALJ did not explain how he arrived at this limitation, but the Commissioner asserts that the ALJ obviously assumed that Plaintiff could work in "productive bursts" but not "sustained intervals." (Def.'s Resp. at 10.) For starters, the parties should not have to argue over what the ALJ may have been thinking. *Scott v. Barnhart*, 297 F.3d 589, 596 (7th Cir. 2002). Furthermore, precluding jobs with "strict production quotas or a fast pace" does not account for moderate concentration issues, *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016), nor does limiting a plaintiff to simple tasks. *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015).

Granted, where, as here, the VE reviewed the record beforehand, failing to include a limitation in the RFC may be harmless error because the VE presumably factored it into his testimony. *Murphy v. Colvin*, 759 F.3d 811, 820 (7th Cir. 2014.) However, the ALJ instructed the VE to assume "those facts and limitations" identified in the hypotheticals. (R. at 115.) And when a VE is told to stick to the hypothetical, he is presumed to have excluded whatever knowledge he may have gained through the record or the hearing testimony. *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004). On remand, the ALJ must ensure that the VE factored Plaintiff's concentration issues into his testimony.

**(6)     The ALJ Failed to Account for Plaintiff's Social-Interaction Issues**

7

Dr. Larsen examined Plaintiff and opined that she could "relate to others on a superficial basis." (R. at 195.) Another doctor made a similar finding years earlier. (R. at 647.) Yet, the ALJ gave Dr. Larsen's opinion "less weight" and then claimed that he gave Plaintiff "further accommodations socially." (R. at 21.) In reality, the ALJ assigned Plaintiff limitations that fail to address Plaintiff's trouble with relating to others.

The ALJ limited Plaintiff to "occasional interaction with coworkers and supervisors, but no public contact in the work setting." (R. at 15.) However, this only addresses her ability to tolerate others' presence for extended periods, not her ability to develop relationships with people. The two are not the same. *Oakley v. Colvin*, 2016 U.S. Dist. LEXIS 107621 *25 (S.D. Ill. Aug. 15, 2016). In *Wartak v. Colvin*, for instance, the plaintiff's doctor limited him to superficial contact but opined that he could still interact with others on an "ongoing basis." 2016 U.S. Dist. LEXIS 29237 *19 (N.D. Ind. March 8, 2016). Moreover, if the ALJ truly intended to assign Plaintiff more severe limitations than "superficial contact only," then he likely would have had to preclude all contact with co-workers. This would almost certainly have rendered Plaintiff disabled. *Walters v. Astrue*, 444 Fed. Appx. 913, 918-19 (7th Cir. 2011) ("the VE testified that no jobs exist for someone who cannot deal with coworker interaction").

True, the ALJ is in charge of determining Plaintiff's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). But the ALJ must discuss "how the evidence . . . supports the ultimate conclusion." *Eakin v. Astrue*, 432 Fed. Appx. 607, 611 (7th Cir. 2011). The ALJ's explanation—that "occasional" is more restrictive than "superficial"—is logically flawed. *Indoranto*, 374 F.3d at 475 ("We cannot uphold the ALJ's decision when it is premised on flawed logic"). On remand, the ALJ must stop swapping limitations with unrelated ones.

**E.    Conclusion**

The ALJ mishandled Plaintiff's seizures and mood disorder. As a result, he could not properly determine whether Ms. Thomas' testimony was consistent with the record. Furthermore, the ALJ failed to build an accurate and logical bridge between the evidence and Plaintiff's RFC. Accordingly, this Court remands the ALJ's decision.

SO ORDERED on July 23, 2018.

 S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE